[No. 9744.    Department Two.    November 4, 1911.]

ROYAL J. MULLIN, *Respondent*, v. ANNADELIA MULLIN, *Appellant*.[1]

DIVORCE—DIVISION OF PROPERTY—WIFE'S SEPARATE ESTATE—DISCRETION OF COURT.    Where the interest of a deceased wife was bid in and purchased at administrator's sale, in contemplation of marriage with the widower, and considering his interest in the property, and after marriage of the parties, other liens accrued against the property, it is not an abuse of discretion, on granting the husband a divorce, to award him part of the real property, the rule as to the wife's separate property acquired before marriage not applying to the peculiar circumstances of the case.

Appeal from a judgment of the superior court for King county, Yakey, J., entered February 23, 1911, upon findings in favor of the plaintiff, after a trial on the merits before the court, in an action for divorce.    Affirmed.

*Peterson & Macbride*, for appellant.

*E. M. Farmer*, for respondent.

[1]Reported in 118 Pac. 638.

CHADWICK, J.—The court below granted a divorce to the respondent, but in so doing found that both parties were to blame, and undertook to put them in the same position they were in "in the first place." Appellant had been the house-keeper for respondent for some time prior to February 1, 1907. Respondent was a widower, and was administrator of the estate of his former wife. The estate consisted of lots 11 and 12, in block 6, of Denny & Hoyt's addition to the city of Seattle. There were certain liens against the property, and claims had been allowed, so that it became necessary to sell it. Appellant bid in the property for the sum of $3,065, paying enough to cover the interest of the deceased person— $1,500, $1,250 of which she borrowed at the time. She thereafter, and after her marriage to respondent, put two mortgages upon the same property, one for $250 and one for $600. The property is subject to local assessments and general taxes amounting to $729.

At the time the decree was entered, the parties possessed household furniture of the value of $500. Respondent had office furniture of the value of about $900. There was also available the sum of $1,007.26, which had been allowed for damages, from which was to be deducted the assessment for benefits allowed by the city. The net figure is given at $814.40 in the brief of respondent. We do not find this figure challenged, either in the record or in the briefs, and assume that it is correct. The court awarded the property, which had a frontage of one hundred feet, forty feet on the corner to respondent, and the remainder to appellant. The dwelling house is on appellant's share of the property. He gave to appellant the furniture, and to respondent the office furniture, etc. He charged each of them with a propor-tionate amount of the liens upon the real property. He also gave to appellant the warrant drawn, or to be drawn, by the city for the allowance of damages.

It is contended that the court abused its discretion in al-lowing respondent any part of the real property, upon the

theory that it was appellant's separate property, it having been acquired before her marriage. As an abstract proposition this would be true, but under the facts disclosed in the record, we think the court was well within the bounds of discretion in making its award. While in theory the whole estate was sold, yet the interest of respondent seems to have been considered at the time, and it is clear that the purchase was made in contemplation of the marriage which was thereafter celebrated. To hold otherwise would be equivalent to saying that appellant might acquire the whole of a property which we are bound to presume was worth at least $3,065, for $1,500. That this was not the intention of the parties is shown by reference to the record. Respondent testified as follows:

"Q. What if any money did she [appellant] pay to you as administrator, and what was the bid? A. The bid, if I remember correctly, was $3,000, or perhaps $3,060. I don't know for sure what the exact figure was. Q. What money did she pay? A. She paid in approximately $1,500. . . . Q. About the balance of the bid, how did you arrange that? A. Well, the balance of the bid I assumed the security for, and assumed I was responsible for the payment of the balance of the bid, and still hold that position. Q. Was the $1,500 sufficient to pay off the obligations against the estate? A. Yes; the $1,500 cleared the property. Q. And the balance, if it had been paid, would have been the balance belonging to the estate? A. Yes, sir."

The order of the court, therefore, was justified by the peculiar facts of the case. The award to appellant of the house and household goods and the money coming from the city gives her, in our judgment, a clear advantage over respondent in the settlement of their affairs.

Finding no abuse of discretion, the judgment of the lower court is affirmed.

DUNBAR, C. J., MORRIS, ELLIS, and CROW, JJ., concur.